FILED
CHARLOTTE, N.C.
APR 25 2008
U.S. DISTRICT COURT
W. DIST. OF N.C.

| | |
|---|---|
| UNITED STATES OF AMERICA ) | **SUPERSEDING** |
| ) | **BILL OF INDICTMENT** |
| ) | |
| v. ) | |
| ) | Violations: 18 U.S.C. § 371 |
| ) | 18 U.S.C. § 1343 |
| ERRICK REDMOND ) | 18 U.S.C. § 2 |
| ) | |

## THE GRAND JURY CHARGES:

### INTRODUCTION

#### Overall Scheme and Artifice to Defraud

1. At all relevant times, in Mecklenburg County, Western District of North Carolina, and elsewhere, ERRICK REDMOND ("REDMOND") was Senior Pastor of Rock Christian Church of Charlotte, North Carolina ("RCC"), Charlotte, North Carolina, and he did and attempted to devise and operate a scheme and artifice to defraud or obtain money and property by means of false and fraudulent pretenses, representations or promises for the purpose of executing a scheme of artifice affecting interstate and foreign commerce, that is, he created a scheme and artifice to defraud One Capital Advisors and its related company Foundation Capital Partners (collectively "OCA") by misappropriating, misapplying, and converting construction loan funds.

2. On or about June 26, 2002, OCA agreed to lend to RCC approximately $736,250.00 so the church could buy land and build a sanctuary and an education building. REDMOND had negotiated the terms of the loan, received the loan commitment letter, and, as church pastor, managed the loan. Paragraph 23 of the loan commitment letter read that "any Loan proceeds will be applied directly by Borrower to construction of Property." Paragraph 24 provided that "All monies shall be used solely to pay for labor, materials, equipment, fixtures and other construction costs associated with the approved construction. In no event shall any Loan proceeds be used for working capital of Borrower or payment of other indebtedness unless approved by Lender."

3. On or about July 29, 2002, OCA and RCC closed on the construction loan. The Negative Covenants section in the Construction Loan Agreement read that "Borrower covenants and agrees that, without the prior written consent of the Lender, so long as it may borrow under

the Note or so long as any indebtedness remains outstanding on the Note, Borrowing shall not: (a) Use any proceeds of the advances under the Note except for the purposes stated . . . . [and] (f) Make any loans, advances or extensions of credit to any person or entity."

## Construction Loan Draws Used to Fund Unrelated Investment

4. In furtherance of the fraudulent and illegal scheme and artifice to defraud, REDMOND deceived OCA by representing that certain construction loan draws would be used to pay construction-related costs when, in fact, these construction loan draws were primarily used to fund an unrelated, spurious investment. Darrell Witherspoon, Thomas Jacobs ("Jacobs") and others known and unknown to the Grand Jury had promised REDMOND, among other things, exorbitant rates of return if REDMOND gave money to them.

5. In furtherance of the fraudulent and illegal scheme and artifice to defraud, REDMOND failed to notify OCA that RCC's sixth and seventh construction loan draws, requested on or about March 18, 2003 and March 21, 2003 and described more fully below, would be invested with, loaned to, or otherwise given to Darrell Witherspoon, Jacobs and others.

6. In furtherance of the fraudulent and illegal scheme and artifice to defraud, REDMOND also directed church leaders and staff to use the construction invoices to obtain construction loan draws and fund the unrelated, spurious investment.

7. On or about March 18, 2003, in furtherance of the fraudulent and illegal scheme and artifice to defraud, REDMOND directed and caused the sending, via facsimile transmission, of a $33,355.72 construction loan draw request from RCC to OCA. In pertinent part, this request read that the "Borrower does hereby certify . . . that all sums included in this advance will be, and all sums previously advanced under the Agreement have been, used exclusively for items set forth in the Construction Contract, including only payment for labor and materials incorporated into the construction of the Project and other approved expenses of the Project . . . ." OCA then directed its bank, Reliance Trust Company ("Reliance"), Atlanta Georgia, to wire transfer the requested funds to RCC, which received $33,355.72 on or about March 20, 2003.

8. On or about March 21, 2003, in furtherance of the fraudulent and illegal scheme and artifice to defraud, REDMOND directed and caused a $30,000 wire transfer of funds from RCC's Wachovia account to Billie Witherspoon, Darrell Witherspoon's grandfather. On or about the same date, Jacobs and Darrell Witherspoon gave REDMOND a promissory note that agreed to pay RCC, on or before April 4, 2003, a 1000% rate of return on the $30,000.

9. On or about March 21, 2003, in furtherance of the fraudulent and illegal scheme and artifice to defraud, REDMOND directed and caused the sending, via facsimile transmission, of a $101,158.00 construction loan draw request from RCC to OCA. OCA then requested that Reliance transfer these funds to RCC, which received $101,158.00 on or about March 25, 2003.

10. On or about March 26, 2003, in furtherance of the fraudulent and illegal scheme and artifice to defraud, REDMOND directed and caused the withdrawal of $100,000 from RCC's

Wachovia account, and he signed for and obtained a $100,000 official check made payable to Jacobs.

11. On or about March 27, 2003, in furtherance of the fraudulent and illegal scheme and artifice to defraud, REDMOND redeposited the funds from the $100,000 check into the church's checking account.

12. On or about March 28, 2003, in furtherance of the fraudulent and illegal scheme and artifice to defraud, REDMOND directed and caused a $46,250.00 wire transfer of funds from RCC's Wachovia account to Billie Witherspoon and a $53,750.00 wire transfer of funds from that account to Jacobs.

13. On or about May 22, 2003, as a result, in part, of the money that REDMOND and others had provided (including a May 21, 2003 loan for $40,000.00), Darrell Witherspoon promised to give RCC $200,000,000.00 on or before August 15, 2003.

14. On or about May 22, 2003, in furtherance of the fraudulent and illegal scheme and artifice to defraud, REDMOND signed a promissory note from Darrell Witherspoon that promised to give his family $25,000,000.00 on or before August 15, 2003.

15. Neither REDMOND nor RCC received the promised monies.

16. On or about November 23, 2004, RCC's loan was foreclosed, and OCA lost approximately $60,000.00.

## COUNT ONE

The paragraphs set forth in the Introduction to this Superseding Bill of Indictment (the "Introduction") are re-alleged and incorporated by reference as if fully set forth herein.

From on or about June 26, 2002, and continuing through on or about May 22, 2003, in Mecklenburg County, within the Western District of North Carolina, and elsewhere,

### ERRICK REDMOND

and other persons known and unknown to the Grand Jury did knowingly and intentionally combine, conspire, confederate and agree with each other and with other persons to commit against the United States the following offense: having devised and intended to devise a scheme and artifice to defraud or obtain money and property by means of false and fraudulent pretenses, representations, or promises for the purpose of executing a scheme and artifice to defraud, knowingly and unlawfully caused to be transmitted in interstate commerce by means of a wire communication writings, signs, and signals, in violation of 18 U.S.C. § 1343.

*United States v. Errick Redmond* Superseding Bill of Indictment – 3

## MANNER AND MEANS

REDMOND and unindicted co-conspirators carried out the conspiracy in the manner and means as described in the Introduction, which is re-alleged and incorporated by reference as if fully set forth herein.

## OVERT ACTS

In furtherance of the conspiracy and to promote its objects, REDMOND and unindicted co-conspirators committed and caused to be committed various overt acts during the conspiracy within the Western District of North Carolina, and elsewhere, including one or more of the overt acts listed in paragraphs 5 through 14 of the Introduction, which are re-alleged and incorporated by reference as if fully set forth herein.

All in violation of 18 U.S.C. § 371.

## COUNTS 2 AND 3

The Grand Jury realleges and incorporates by reference the above Introduction and preceding Count.

On or about the dates set forth below, in Mecklenburg County, within the Western District of North Carolina, and elsewhere,

## ERRICK REDMOND

and other known and unknown persons, having devised and intended to devise a scheme and artifice to defraud or obtain money and property by means of false and fraudulent pretenses, representations, or promises for the purpose of executing a scheme and artifice to defraud, knowingly and unlawfully caused to be transmitted in interstate commerce by means of a wire communication the writings, signs, and signals listed below, and they aided, abetted, commanded, counseled, induced or procured the commission of these offenses.

| COUNT | DATE | WIRE TRANSMISSION |
|---|---|---|
| 2 | March 18, 2003 | facsimile transmission from Rock Christian Church, Charlotte, North Carolina, to OCA, Jackson, Mississippi |
| 3 | March 21, 2003 | facsimile transmission from Rock Christian Church, Charlotte, North Carolina, to OCA, Jackson, Mississippi |

*United States v. Errick Redmond* Superseding Bill of Indictment – 4

In violation of Title 18, U.S.C. §§ 1343 and 2.

A TRUE BILL:

FOREPERSON

GRETCHEN C. F. SHAPPERT
United States Attorney

KENNETH M. SMITH
Assistant United States Attorney

*United States v. Errick Redmond* Superseding Bill of Indictment – 5